**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                        :
JUDITH K. MALONEY,                      :      CIVIL ACTION
                    Plaintiff,          :
                                        :      NO. 13-7664
        vs.                             :
                                        :
CITY OF BETHLEHEM, PENNSYLVANIA,        :
                    Defendant.          :
_____:

Henry S. Perkin, M.J.                                    November 26, 2014

**<u>MEMORANDUM</u>**

        This matter is before the Court on Motion for Summary Judgment filed by the

Defendant, City of Bethlehem, on July 30, 2014.  Plaintiff's Response to Defendant's Motion for

Summary Judgment was filed on August 14, 2014.  On October 22, 2014, counsel for both

parties was ordered to file Memoranda of Law on issues which the Court needed clarification in

order to decide the pending Motion for Summary Judgment as to Plaintiff's claim for violations

of her procedural due process rights.  Having reviewed and considered the contentions of the

parties, the Court is prepared to rule on this matter.

        Plaintiff, Judith K. Maloney ("Plaintiff" or "Ms. Maloney"), alleges that

Defendant, City of Bethlehem ("City"), violated her rights by terminating her employment as

Director of Health in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621,

_et seq_. (Count I); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e which prohibits

Sexual Discrimination (Count II); the retaliation provisions of the Age Discrimination in

Employment Act, 29 U.S.C. § 621, _et seq_. (Count III); the retaliation provisions of the Title VII

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act

of 1991, 42 U.S.C. § 1981(A), et seq. (Count IV); and her right to procedural due process under the Fourteenth Amendment of the United States Constitution, 42 U.S.C. § 1983 (Count V).

In her Opposition to Defendant's Motion for Summary Judgment, Plaintiff formally requests the dismissal with prejudice of her claims for age discrimination and related retaliation in Counts I and II of her Complaint and her claim for Title VII gender discrimination in Count III of her Complaint.  See Pl.'s Mem. Law, p. 1 n.1.  Accordingly, those claims will be dismissed with prejudice in an Order following this Memorandum Opinion.  Plaintiff's remaining claims for review by this Court are for Title VII retaliation (Count IV) and for Fourteenth Amendment procedural due process (Count V).

## I.     JURISDICTION.

The Court has jurisdiction over Ms. Maloney's federal claims pursuant to 28 U.S.C. § 1331.

## II.    STANDARD OF REVIEW.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010) (quotation omitted)).  An issue is "genuine" if a reasonable trier of fact could return a favorable verdict for the non-moving party.  Mengel v. Reading Eagle Co., CIV.A. 11-6151, 2013 WL 1285477 (E.D. Pa. Mar. 29, 2013), *appeal dismissed* (Oct. 30, 2013)(citing Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986));

Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson, 477 U.S. at 248).

Once the movant "points to evidence demonstrating no issue of material fact exists, the

non-moving party has the duty to set forth specific facts showing that a genuine issue of material

fact exists and that a reasonable factfinder could rule in its favor." Favata, 511 F. App'x at 158

(quoting Azur, 601 F.3d at 216 (internal quotation marks omitted)). "In evaluating the motion,

the court must draw all reasonable inferences in favor of the nonmoving party, and it may not

make credibility determinations or weigh the evidence." Guidotti v. Legal Helpers Debt

Resolution, LLC, 716 F.3d 764, 772 (3d Cir. 2013) (internal quotation omitted). The Court's

task is to determine whether there exist any factual issues to be tried, not to resolve disputed

issues of fact. Anderson, 477 U.S. at 247-49. Whenever a factual issue arises which cannot be

resolved without a credibility determination, the Court must credit the non-moving party's

evidence over that presented by the moving party. Id. at 255. If there is no factual issue, and if

only one reasonable conclusion could arise from the record regarding the potential outcome

under the governing law, summary judgment must be awarded in favor of the moving party. Id.

at 250.

III.    FACTS.[1]

Plaintiff is a resident of Bethlehem, Pennsylvania and holds a Bachelor of Science

degree in nutrition from Misericordia College, a master's degree in public health from East

Stroudsburg University and a law degree from Widener University. Maloney began working as

---

[1]    Plaintiff filed a separate document responding to Defendant's Statement of Undisputed Material Facts.

the City of Bethlehem Health Director in January 2004.  She interviewed with the City of

Bethlehem Board of Health; she then had to go through an approval process with the State

Department of Health and go before city council for confirmation in late January 2004.

Maloney was hired under Act 315 of the Third Class City Code, which states that

the Board of Health oversees the Health Director.  The decision regarding hiring Maloney was

made by the Board of Health and Dr. David Beckwith.  The Council Agenda and Council

Minutes of January 20, 2004 indicate a resolution was sponsored, approving Judith K, Maloney

chosen by the Board of Health.  When Maloney was first hired, her immediate supervisor was

Tony Hanna, Director of Community and Economic Development, who reported directly to the

mayor.  Maloney also had a direct reporting relationship to the Board of Health. When Tony

Hanna moved to the Bethlehem Authority, Joe Kelly became Maloney's direct supervisor.

In the end of 2001 early 2002, Maloney commenced a relationship with Michael

Correll, and she and her children moved in with Correll in June 2008.  In 2008, Maloney had a

driving under the influence ("DUI") charge for which she completed a drug and alcohol

evaluation as part of an ARD program.  She was suspended by the City in 2008 and was asked to

go through employee assistance counseling which she completed; then she became – in her own

words – a "better, healthier person."  After Maloney was suspended for the DUI, when she

returned to work several city employees from other departments told her they thought it was

unfair how she was treated and that male employees such as Jeff Ritz, Mike Palladino, a manager

in the water treatment plant, and Tom Marshall, none of whom were union members, had not

been suspended for similar conduct.  In 2008 Maloney told her then-manager, Tony Hanna, that

she believed that she was being treated differently than male employees; Hanna said it was out of

his control.

Around mid-February of 2012, Maloney contacted Turning Point, a domestic abuse organization, because she was concerned that she was the victim of abuse. On March 8, 2012, Maloney and Correll had dinner at a local restaurant and Maloney consumed no alcoholic beverages. She left the restaurant before Correll, who had consumed alcoholic beverages, and after he arrived home a short time later, they had a verbal and physical altercation. Two uniformed police officers arrived at their residence and said they had to take Maloney to the police station. Maloney was charged with simple assault. The preliminary hearing was held in mid-July 2012, at which time all charges against Maloney were withdrawn.

After the March 8, 2012 incident, Maloney began counseling at Turning Point, beginning with phone counseling in March 2012 and then face-to-face counseling through the late fall and early winter of 2012. She also attended a facilitated support group at Turning Point. She never received counseling for anger management.

Following her March 8, 2012 arrest, Maloney was suspended with pay and placed on administrative leave. In a detailed Memorandum to the Mayor dated May 24, 2012, Joseph Kelly, Director of Community and Economic Development and Maloney's immediate supervisor, recommended Maloney's termination. His recommendation was made due to her lack of candor to City police about the March 8, 2012 incident which he considered to be a Code of Ethics violation, Maloney's prior misconduct involving a drunk driving incident and harassment charges which involved misuse of a City cell phone surrounding issues with Corell, her boyfriend. Kelly also told the Mayor in his May 24 Memorandum that a 2010 City assessment found that domestic violence had the greatest impact on community health and noted

the incongruity of the Director of Health Bureau managing program grants for domestic violence, given Maloney's public domestic partnership issues leading to criminal charges over the years, and special consideration given to her following multiple arrests in 2008 when Kelly was a member of the City Solicitor's office.  Kelly also advised the Mayor that the City had dismissed three police officers during the the prior year for lying during investigations, that Maloney had enforcement and prosecution powers as the Director of Health Bureau, and that Maloney should be held to a similar standard as the dismissed police officers.  Kelly noted that, in addition to her dishonesty during the March 12 investigation and her prior misconduct while the Director of Health Bureau, Maloney had a considerable history of staff complaints about her and discontent with her leadership which he felt would compromise her ability to return to her leadership position.

During a May 24, 2012 meeting attended by Kelly, Assistant City Solicitor Christopher C. Cooper, Kathleen Garman, personnel director, Maloney and Maloney's counsel, Melissa Rudas, Esquire, Kelly said the City wanted Maloney to resign in lieu of termination. Maloney and her counsel were made aware that the City would not consider reinstating her to the Health Director position, but rather would consider concessions in the area of payment for unused leave to which she was not otherwise entitled and certain other provisions concerning how the City would disclose information about her in future employment inquiries, and a draft settlement agreement was forwarded to Maloney's counsel on May 24, 2012 by Assistant City Solicitor Cooper.  At the meeting Maloney stated that male employees with far more serious charges were treated differently and that she was a victim of domestic violence.  Maloney and her counsel stated that when the male employees were involved in similar incidents they were treated

differently and Kelly and Garman looked surprised.  Based on information Maloney had gathered while working at City Hall and public records, Maloney believed that the City had treated male employees involved in alleged domestic violence or similar incidents differently. She was referring to Tom Marshall, Tom Kiefer, John Schleicher, Scott Sterner and Jeff Fritz.

In response to the City's settlement offer, Maloney's counsel, Attorney Rudas, asked to have until June 7 for Maloney to make a decision concerning the proposed Settlement Agreement.  Rudas then made a plea directly to the Mayor by letter dated May 31, 2012, that the Lehigh County District Attorney recognized that Ms. Maloney was a victim in the March 8, 2012 domestic incident and withdrew the criminal charges which had been filed against her.   Rudas provided press statements in March and July of 2012 in which she portrayed Maloney as the victim in the domestic violence incident and suggested that the charges were being dropped and that Correll had assaulted and injured Maloney the night of the incident.  In response to the press coverage generated by Attorney Rudas, a spokesperson for the Lehigh County District Attorney's Office provided a July 24, 2012 press statement after the charges were withdrawn which negated the portrayal of Maloney as the victim and instead indicated that the charges were withdrawn because Maloney continued to receive counseling and not because the District Attorney's Office believed that she was a victim of domestic violence or that there was insufficient evidence to meet the burden of proof.  Deputy District Attorney Juliet Dowling e-mailed a statement to the press stating "The charges were withdrawn because I felt that it was an appropriate resolution to the case because Ms. Maloney accepted responsibility and was getting therapy."

Maloney was paid while on suspension and following the disposition of the criminal changes, by letter to City Solicitor Jack Spirk dated August 27, 2012, Attorney Rudas

demanded $180,000 to settle Maloney's labor case, medical benefits until December 31, 2013 and other terms.  On August 28, 2012, Maloney called the City's Safety, Wellness and Training Coordinator Jennifer Swett intimating that she was forwarding an EEO complaint and planned to file the complaint with the state, but wanted to report it to the City per protocol.   On August 28, 2012, then Assistant City Solicitor Jennifer Doran wrote Attorney Rudas concerning Maloney's telephone call to Jennifer Swett and inquiring as to the EEO issue.  On August 29, 2012, Attorney Rudas replied that her client simply wanted to know who the EEOC Compliance Officer was, that Maloney had not filed a Complaint and that Maloney remained committed to amicably resolving her employment issue.  The August 29, 2012 letter also indicated that, in addition to the settlement proposal made the prior week, Maloney was willing to return to her position as City Health Director with "no strings attached" and a guarantee that there would be no hostile work environment.

        In response to the Rudas demand, on October 2, 2012, Assistant City Solicitor Doran reiterated the City's position and notified Attorney Rudas that a date for a pre-determination hearing needed to be arranged after October 12, 2012.   On October 18, 2012, Attorney Rudas criticized the City's negative response to Maloney's settlement demand and the City's position that a pre-determination hearing would go forward, and threatened that if the City terminated Maloney, an EEOC complaint would be filed and litigation would follow.  On October 19, 2013, Assistant City Solicitor Doran replied, indicating that the City did not fear the threat of litigation and further related that over the past few months she (Doran) has attempted to obtain responses from Rudas on the matter and is repeatedly told that there is someone on vacation, that there had been no opportunity to speak with Maloney or that Maloney's counsel

8

was in the midst of trials.  So, given the delays, Doran related that it was not unreasonable to request a response within 10 days to the proposal sent to her and noting that the pre-determination hearing would be to discuss Ms. Maloney's situation and permit any updates before a decision was made.

In a letter dated October 23, 2012 from Attorney Rudas to Assistant City Solicitor Doran, she indicated that her client wished to continue negotiations.  Attorney Rudas also stated that she and Maloney met with Joseph Kelly on May 24, 2012 and knew that his recommendation was for termination and that she had been discussing Maloney's case with Mayor Callahan and City Solicitor Spirk and felt that a predetermination hearing was not required, because Maloney's position did not require any such predetermination.  In response, Doran wrote to Rudas again October 26, 2012, indicating that the City intended to set a date for the predetermination hearing in short order and, if there is a revised proposal, Rudas should advise immediately.

Notification that the hearing/meeting was scheduled for November 7, 2012 was provided to Maloney by letter dated October 26, 2012 from her supervisor, Joseph Kelly.  In that notification, Kelly also stated that the City was advised that circumstances may have changed since the May 24, 2012 initial meeting, noting inconsistencies in what Maloney told police, that serious charges were made against a member of management, and that Maloney had a right to respond to the charges and provide additional information.  On November 1, 2012, Attorney Rudas wrote to Kelly stating that Maloney was not willing to participate in the hearing and copied the Mayor, the City Solicitor and others.   On November 5, 2012, Assistant City Solicitor Doran sent correspondence to Attorney Rudas, indicating the City's intention to go forward with

9

the hearing and that if Attorney Rudas wanted a separate meeting to discuss the case, one could be scheduled for the following week.  Attorney Rudas replied to Doran on November 5, 2012 that Maloney would participate in the meeting only if she could record it.   On November 7, 2012, Doran replied that the City did not agree that Maloney could record the meeting.

On November 12, 2012, Attorney Rudas notified the City that she could not be present for the hearing.  On November 13, 2012, Doran provided four alternate dates and replied that one final time would be given for the hearing.   On November 14, 2012, Attorney Rudas sent Attorney Doran a letter memorializing their discussion and indicating that she and her client would appear for a hearing on November 26, 2012.   Attorney  Rudas also stated that Maloney and Rudas were willing to negotiate a settlement with the City provided that the City respond to her initial settlement proposal with a reasonable settlement offer.

The hearing took place on November 26, 2012, and was attended by HR Director Kathleen Garman, Joe Kelly, Jennifer Duran, Attorney Rudas and Maloney.  The hearing was very short and not recorded in any fashion. Maloney only recalls being asked where she was living, if she was drinking, and if she shared that she was going to Turning Point for counseling. Doran did not recall the exact questions she asked, but the purpose of the questions was to determine the current status of what was going on with Maloney.  Doran has not seen any notes anyone took of the meeting and Doran does not recall anything that Maloney specifically said at the hearing.  When asked if Doran was aware of any conclusion to terminate Maloney's employment as a result of the November 26, 2012 hearing, Doran answered, "I believe there were still a lot of factors that were being considered at that point, but I don't know if there was -- I don't recall when decisions were made specifically; this was a while ago." Kelly testified that he

10

doesn't recall specifically why the hearing took place, but it was his memory "that the solicitor's office recommended that we do that. I just don't remember why."   Kelly does not remember what was discussed at that meeting or how long the meeting was and he has no recollection of anything that took place.

Following the November 26 hearing, the next time the City contacted Maloney was one month later, on December 28, 2012, when her attorney was advised that the City was demoting Maloney to Sanitarian at a salary of $64,000.00.  A sanitarian had retired and Kelly believed Maloney was qualified and Kelly was willing to have Maloney serve in that position. This non-supervisory position of Sanitarian in the Health Department under Kelly's command paid about $10,000 less than the Director position, but Maloney would then be able to keep all her employee benefits.  The position was, however, one of civil service and Maloney would need to pass the Civil Service test to obtain the job.   The City agreed to provide Maloney with time to study for the exam if she agreed to the proposal to fill that position with a Release of her employment issues.  The sanitarian position involves restaurant inspections, property rubbish complaints, stray animal complaints, and related matters.   Kelly testified that a sanitarian acts very much like a police officer; sanitarians investigate public health violations and write citations for violations.   If a sanitarian writes a violation, the sanitarian attends a Bethlehem Magistrate hearing if a violation is filed, and testifies.  Maloney was advised that she would need to report to work the first Monday of January 2013.  Maloney asked her attorney to request a meeting to determine what her tasks would be as a sanitarian.

By December 28, 2012, the City had made the contingent offer of the Sanitarian position through Maloney's attorney verbally but was advised that Maloney was only willing to

accept some of the terms of the offer.  In response to the verbal proposal, Attorney Rudas

informed the City by letter dated January 2, 2013 that her client could not make a decision until

there could be a meeting with the City and suggested January 8, 2014.   Rudas, on behalf of

Maloney, also wanted the City to put in writing a summary of the offer being made to Maloney

by the City and the City complied on January 4, 2013.

        In the morning of January 4, 2013, Attorney Rudas, Jennifer Duran, Joe Kelly and

Jessica Lucas met with Maloney.  At that time Maloney did not disclose that she had filed an

EEOC complaint.  During the January 4 meeting, there was no mention that a condition to the

offer of sanitarian was that Maloney would be required to sign a Release of any claims and the

City never referenced a Release or Settlement Agreement as a term at the meeting.  Maloney was

given three hours to make a decision on waiving her rights. Maloney felt she had no choice but to

accept the position because she needed work and she was willing to work as a sanitarian.

Maloney intended to come to work on the following Monday as a sanitarian.

        After the January 4, 2013 meeting, Assistant City Solicitor Doran forwarded a

letter to Maloney, which was the first time a written offer was made, as far as Doran "c[ould]

recall off the top" of her head.  In item 5 of the letter, Doran requested that Maloney waive and

release any claims that she had against the City.  Attorney Rudas authored a response letter dated

January 4, 2013, in which she indicates that Maloney would have no choice but to accept the

sanitarian position but that she would not sign a Release.  The City was advised that Maloney

was prepared to start immediately, but that she was unwilling to accept the City's insistence that

Maloney execute a Release of all claims, which were set forth in Items 5 and 6 of Doran's

January 4, 2013 letter.  Upon receipt of notification that Maloney was unwilling to sign a

Release, Doran, on behalf of the City, responded that the City was unwilling to remove the
Release terms, which were now required for Maloney to accept the demotion to sanitarian.

      Three days later, on January 7, 2013, Doran authored a letter on behalf of the City,
in which she stated: "As such, kindly let this letter confirm the City's acknowledgement of the
rejection of the offer to return to employment as a sanitarian for the City of Bethlehem."  As of
January 7, 2013, Doran testified that she was not aware of any action which the City had taken as
of that time to formally terminate Maloney's employment.  The City and Doran were formally
advised Maloney filed an EEOC Charge on January 7, 2013.  The following day, January 8,
2013, Doran acknowledged receipt of the EEOC Charge filed by Maloney. Kelly was also aware
that Maloney filed the EEOC charge.  Assistant City Solicitor Doran testified that many months
before January 4, 2013, she was aware that Maloney had called the City asking about filing a
Complaint and that the words "EEOC" may have been used at that time.  In the EEOC Charge,
Maloney alleged discrimination based on sex and age, indicating that when male City employees
had been charged with or convicted of crimes involving Protection From Abuse Orders, domestic
violence, sex with minors, rape, and drug charges, these employees were not suspended, and that
as a female, Maloney was treated differently; and also that by removing Maloney/suspending her
as Health Director and replacing her with Kristin Wenrich, a substantially younger female,
Maloney had been discriminated against based on her age.  In its EEOC Position Statement, the
City acknowledged that criminal charges were filed against the male employees Maloney named
in her EEOC Charge.

      On January 10, 2013, Maloney was advised that her employment with the City
was terminated.  Kelly testified that Maloney was not terminated prior to January 10, 2013.

From the time Kelly wrote his May 2012 recommendation to terminate Maloney until January 10, 2013, almost eight months later, Kelly does not remember if he had any communication with the Mayor in which he advised the Mayor that he was going to notify Maloney that she had been terminated..  Kelly also does not know if he notified the City's Board of Health that he was going to terminate Maloney's employment.  Kelly has no notes of any kind concerning conversations he ever had with the Board of Health concerning Maloney and there is no evidence that Kelly asked the Board of Health for authorization to terminate Maloney's employment.

Kelly testified that he would look at the employee handbook before making personnel/employee decisions.  According to the City of Bethlehem employee handbook policy: "To be effective, disciplinary action must be timely. Therefore, immediate action will be taken to investigate and determine the validity of any alleged offense. Upon determination that the offense was committed, disciplinary action should be invoked without further response. Delay in imposing punishment, once the facts have been ascertained, will not be condoned and may be a basis for overruling a supervisor in the event of an appeal. Each offense will be acted on individually. No accumulation of offenses will be permitted as a basis for punishment."

The City contested Maloney's Unemployment Compensation claim.  Maloney was granted benefits and the City filed an appeal. In the Appeal the City claims that, "Ms. Maloney was not discharged from her employment with the City of Bethlehem. Rather, it was Ms. Maloney's voluntary decision to no longer be employed by the City of Bethlehem" and that "Ms. Maloney was provided the opportunity to have suitable full-time employment, which she chose not to accept. "

The City of Bethlehem is a City of the Third Class with an optional charter, which

14

is known as the strong Mayor form of government.  Kelly believes that Maloney violated the Code of Ethics by not maintaining a course of conduct that at all times will bring credit to herself and the City and the most important violation was lying to the police.  At no point in time did Kelly ask City Council to approve the termination of Maloney.   When Maloney's replacement, Kristin Weinrich, was hired, her salary as the Director of Health was approved by a Resolution at the Bethlehem City Council meeting.  The sanitarian position was later advertised by the City of Bethlehem on March 8, 2013.

IV.   **DISCUSSION.**

      A.   **Fourteenth Amendment Procedural Due Process Claim.**

To state a claim under § 1983 for deprivation of Fourteenth Amendment procedural due process rights, a plaintiff must allege: (1) that she was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty or property;" and (2) the procedures available to her incident to that deprivation did not comport with the requirements of "due process of law."  Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006);  Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).  Thus, we must first examine whether Plaintiff's interest in retaining her job as Health Director is encompassed within the Fourteenth Amendment's protection of property.  "To have a property interest in a job . . . a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment."  Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005)(citing Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)).   To determine whether Plaintiff has a protected interest in her job, we look to Pennsylvania law.  Walters v. Washington County, 415 F. App'x 374, 377 (3d Cir. 2011)(citing Kelly v. Borough of Sayreville,

107 F.3d 1073, 1077 (3d Cir. 1997)).  In Pennsylvania, employment with the Commonwealth or

its municipalities is at-will unless the General Assembly enacted legislation allowing it to be

altered.  Elmore, 399 F.3d at 282-83 ("[A] local government in Pennsylvania cannot provide its

employees with tenure status unless there exists express legislative authority for doing so.")

     In Count V of her Complaint, Plaintiff alleges that she was a civil service

employee and could not be terminated other than in compliance with the Civil Service Act.  53

P.S. § 39408.  Following the close of discovery and in response to Defendant's summary

judgment motion, however, Plaintiff concedes that she was not a civil service employee in

response to paragraph 71 of Defendant's Statement of Undisputed Material Facts, as follows:

> 71. Maloney was never a civil service employee during his tenure and her
> appointment, which Maloney signed on January 26, 2004, indicates that she was
> appointed by John Callahan, the Mayor of Bethlehem January 20, 2004 and the
> appointment indicates that it is not a civil service appointment. ([Def.'s] Exhibit "JJ",
> Deposition of Joseph Kelly 94:21-25; 95:1-20).

> **Answer:** Admitted in part, denied in part.  **It is admitted that Maloney was not
> a civil service appointee.**  As stated in the subject resolution, city council had to
> approve the appointment by the mayor.  To the extent that this averment suggests
> that the mayor could act unilaterally, it is denied.

See Dkt, No. 21; Pl.'s Resp. to Def.'s Statement Undisputed Material Facts at 23.   As Defendant

notes, in response to Defendant's summary judgment motion and without a request to amend the

pleadings, Plaintiff presents a new theory that her claim for violation of due process is based on

Pennsylvania's Third Class City Code, City Ordinances that do not involve civil service and/or

the City Handbook.  In her supplemental memorandum regarding this issue, Plaintiff contends

that Pennsylvania's Third Class City Code and the corresponding City of Bethlehem Ordinance

are enabling statutes which require the establishment of a Board of Health, the appointment of a

Health Officer and the Appointment and Removal of Health Employees.  See Dkt. No. 28 at 2.

She contends that the City terminated her without complying with the mandated removal procedure established by those statutes, i.e. removal as a result of the Board of Health's recommendation and City Council's approval, thus she was deprived of her alleged right to continued employment without due process provided by statute.

In making this argument, Plaintiff overlooks the requirement that she must first prove that she was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty or property." Whether a person has a legitimate entitlement to and a property interest in a government job is a state law question. Elmore, 399 F.3d at 282. Absent a showing that state law has created a legitimate entitlement to continued employment, a public employee is presumed to be an at-will employee. Cooley v. Phila. Hous. Fin. Agency, 830 F.2d 469, 471 (3d Cir. 1997), *called into question on other grounds by* Foster v. Chesapeake Ins. Co., Ltd., 933 F.2d 1207, 1215 n.12 (3d Cir. 1991). "Public employees in Pennsylvania are employees-at-will subject to summary dismissal for a good reason, a bad reason or no reason at all, unless the legislature explicitly confers tenure as an integral part of a comprehensive governmental employment scheme." Davenport v. Reed, 785 A.2d 1058 (Pa. Commw. Ct. 2001)(citing Stumpp v. Stroudsburg Municipal Authority, 540 Pa. 391, 658 A.2d 333 (1995); Am. Federation of State, County & Municipal Employees v. Shapp, 443 Pa. 527, 280 A.2d 375 (1971); Bolduc v. Bd. Supervisors of Lower Paxon Township, 152 Pa. Cmwlth, 248, 618 A.2d 1188 (1992), *appeal denied*, 533 Pa,. 662, 625 A.2d 1195 (1993)). Examples of legislation specifically conferring tenure to public employees are the Civil Service Act, the Public Employe Relations Act and the Public School Code of 1949. Id. at 1063 n.4.

In support of her claim that she had the right to continued employment, Plaintiff

17

cites Article XXIII of the Commonwealth of Pennsylvania Third Class City Code which requires

the establishment of a Board of Health.  Section 2305 requires the appointment of a Health

Officer which "Council shall, by ordinance, determine the manner and method of selection."

Section 2336 as it existed on Plaintiff's termination which stated: "The council of such city shall,

in all cases, where possible, follow the recommendations of said board of health as to

appointment and removal of all persons having to do with the administration of the public health

affairs of the city . . ."   Plaintiff is, in effect,  contending that the mandated procedure for her

removal as Health Director was not followed, therefore, by implication, she had an ongoing right

to continued employment as the Health Director.  Plaintiff does not point to legislation

specifically conferring tenure to the Health Director.  As such, under Pennsylvania law, Plaintiff

was an at-will employee and had no legitimate entitlement to continued employment as the

Health Director.[2]  Thus, I will grant the motion for summary judgment as to Plaintiff's

Fourteenth Amendment due process claim.

### B.      Title VII Retaliation Claim.

Count IV of Plaintiff's complaint contains a Title VII retaliation claim.  Congress

enacted Title VII to address discriminatory employment practices. The law states, in pertinent

part, that:

> It shall be an unlawful employment practice for an employer —
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to
> discriminate against any individual with respect to his compensation, terms,

---

[2]        Additionally, without a request to amend the pleadings, Plaintiff's proposed theory that her due process claim is based upon the Third Class City Code, City Ordinances which do not involve civil service and/or the City Handbook violates the statute of limitation and Federal Rule of Civil Procedure 15(c).  For this additional reason, Plaintiff's claim for violation of her Fourteenth Amendment due process rights will be denied.

conditions, or privileges of employment, because of such individuals race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individuals race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).  Title VII provides a separate statutory remedy for retaliation claims. Title VII § 2000e-3(a) provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made  an unlawful employment practice by this subchapter [of Title VII] or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter [of Title VII]."  42 U.S.C. § 2000e-3(a).

To establish a retaliation claim against an employer under Title VII, a plaintiff must demonstrate that: (1) she engaged in protected activity; (2) the employer subjected her to an adverse employment action after or contemporaneously with her protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006).  To meet the "protected activity" prong of the Moore test, a plaintiff must show that she was discriminated against because she either: (1) opposed any practice made an unlawful employment practice  by Title VII; or (2) made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under Title VII.  42 U.S.C.§ 2000e-3(a).  In this case, Plaintiff's Title VII retaliation claim implicates only the "make a charge" clause.  Plaintiff alleges that the temporal proximity of her filing and discharge establishes a causal link between her filing and firing. Plaintiff contends that she has established a prima facie case of retaliation because the record

supports finding that: (1) she engaged in protected activity in the form of filing an EEOC charge alleging Title VII sex discrimination against Defendant on January 4, 2013; (2) on January 7, 2013, the Defendant withdrew its decision to demote her to a civil service sanitarian position when she refused to waive any potential claims against the Defendant; and (3) she was terminated on January 10, 2013, within three days of the Defendant's receipt of notice of her filing the EEOC charge.

Plaintiff's Title VII retaliation claim turns on the cause of her termination. Plaintiff contends that two types of evidence support a finding that she was terminated because of her protected activity: (1) Defendant insisted that Plaintiff execute a Release of all claims before she would be demoted to sanitarian at a time months before her firing when Defendant admitted that it had information that Plaintiff intended to pursue an EEOC charge; and (2) within days of receiving notice of the EEOC charge, Defendant terminated Plaintiff's employment for a non-work incident which had occurred ten months earlier and for which criminal charges against her were dismissed more than seven months earlier.  Defendant proffers that Plaintiff was terminated as Health Director due to her conduct in lying to the Bethlehem Police which violated the City's Ethics Policy and is a terminable offense.  In order to survive summary judgment, then, Plaintiff must be able to point to evidence that could persuade a jury "both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action."  See Moore, 461 F.3d at 342.

Plaintiff first contends that a jury may find retaliatory termination due to her failure to execute a Release of all claims before she would be demoted to a sanitarian position. When the evidence in a case is such that a rational trier of fact could not credit a self-serving

denial, a court may decide so as a matter of law.  See Gonzalez v. Secretary of Dept. of

Homeland Sec., 678 F.3d 254, 264 (3d Cir. 2012) ("The circumstantial evidence offered by the

[defendant] undermines and outweighs [the plaintiff's] claim of ignorance, such that this is a case

where the court, based on all of the evidence, can say with confidence that a rational trier of fact

could not credit the claimant's denial.").  In considering Plaintiff's denial, "the issue is . . .

whether [her] testimony, when juxtaposed with the other evidence, is sufficient for a rational

factfinder to credit her testimony, despite its self-serving nature." Johnson v. MetLife Bank,

N.A., 883 F. Supp. 2d 542, 549 (E.D. Pa. 2009).

> Defendant contends in its motion for summary judgment that:
>
> Maloney's claim of retaliation is bogus and indeed this is a case where Maloney, a law school graduate and always represented by counsel, attempted to use the EEOC process improperly to threaten and cajole her employer into changing its mind about her termination.  Ultimately, the untoward manner in which the EEOC Charge was filed, through one lawyer, while the other one sat with the City attorney and plaintiff attempting to negotiate a resolution all the while knowing they had already presented a Charge to the EEOC and then did not disclose it.  At the end of the day, it is clear that the City had every right to terminate Maloney as she was no longer suitable to be the face of the City as its Health Director and Maloney's continued efforts to refuse to accept that decision by threatening the City with litigation and the City's steadfast decision to hold the line is not evidence of discrimination.
>
> Plaintiff's claim that she was entitled to be given the Sanitarian position while she continued to fight for the Director position back and also make claims against the City is unwarranted and not based upon existing law.
>
> . . . .
>
> Causation may be established through evidence such as the temporal proximity between the protected activity and the termination, "intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." LeBoon v. Lancaster Jewish Comm'y Ctr. Ass'n, 503 F.3d 217, 232-33 (3d Cir. 2007).  The question that the Court needs to answer is "whether there is sufficient evidence in the

record for a reasonable fact-finder to determine that [Maloney's] termination from her position as Health Director was in retaliation for presenting an EEOC Charge. Here there is no causal relationship whatsoever between the EEOC filing and the employees termination as she knew she was being terminated from the Health Director position effective at the end of the day on January 4 yet she and her attorney withheld the fact that she had secretly filed an EEOC complaint the evening before from the Solicitor at the meeting on January 4 only to now bring the claim as the centerpiece of a retaliation claim. Indeed, plaintiff does not, nor could she, contend that she was entitled to the Sanitarian position and clearly, it was being discussed in the context of an option for resolving all of her employment claims amicably.

It was never the intention of either Title VII or the ADEA to permit the law to be used as a sword against an employer, particularly a municipal government, so that a managerial employee who was to be terminated could stall or circumvent entirely the termination simply by threatening to file bogus charges, then doing so without the knowledge of the employer and then claiming retaliation when the inevitable termination occurs.

E.     COUNT IV - PLAINTIFF'S  CLAIM OF RETALIATION  BASED UPON THE TITLE VII CLAIM IS MERITLESS

Plaintiff claims retaliation under 42 U.S.C. §2000(E), 42 U.S.C. §1981 (A). based upon her claim that the City received her first EEOC Charge before she was terminated and that when she was "formally" terminated it was after receipt of the Charge and in retaliation for reporting conduct that constituted sex discrimination protected by Title VII.

. . . .

For the same reasons as outlined above, plaintiff at the end of discovery is unable to muster any proof for either the underlying or the retaliation claim and the City had the right to terminate plaintiff from her position as Health Director and not offer her the contingent non-managerial position under the terms that she demanded.  The City did not have to submit itself to Maloney's desire to continue in either a paid suspension status or to provide her with alternate employment so she could  pursue unsubstantiated and false claims against the City.  Where as here, the disingenuous approach taken by the former employee is manifested first in attempting to use threats against the City to her negotiating advantage, and then attend the January 4 meeting with the City knowing that it was the final day of her employment as Health Director as well as the deadline for her decision on the alterative post suggested, and then withhold the fact that she had secretly through another attorney filed an EEOC complaint against the City only to now present a case of retaliation in this Court.  Such tactics should not be countenanced under the guise of presenting discrimination in employment claims.

Mem. Law in Support Mot. Summ. J. at 2-3, 12-14.  In response to Defendant's Motion for

Summary Judgment, Plaintiff offers the following:

> In its Motion Defendant fails to formally address its proffered reason for
> withdrawing its offer of the sanitarian position to Maloney; thus, it has failed to
> meet its burden to offer a legitimate non-discriminatory reason and Defendant's
> Motion should be denied on that basis. In any event, given the factual record
> before the Court, the only proffered reason which Defendant could offer is
> Maloney's refusal to Release her claims, which is not a valid reason under the law
> given that the City had deemed Maloney worthy of being demoted to sanitarian.
> *See e.g. Chapter 7 Trustee v. Gate Gourmet, Inc.*, 2012 U.S. App. LEXIS 11793
> (11th Cir. 2012) (finding that employer which decided to offer an employee a light
> duty job conditioned on the requirement that the employee drop her EEOC charge
> cannot withdraw the offer after the employee refuses to withdraw the Charge).

3. Pretext

> Even if this Court were to find that Defendant has carried its burden to
> offer a legitimate nondiscriminatory reason, there is more than sufficient evidence
> to show pretext, thereby permitting the conclusion that a discriminatory reason
> more likely motivated Defendant, and its proffered explanation is unworthy of
> credence. Here, pretext is established by the following:

> 1. All charges against Maloney for the non-work domestic incident were
> dismissed in July 2012, but the City did not terminate Maloney until six month[s]
> later.

> 2. Kelly testified that only the mayor and not Kelly had the authority to terminate
> Maloney; however, Kelly is unable to recall any discussions with the mayor
> during the entire time Kelly was Director concerning his memorandum and
> recommendation to terminate Maloney, and Defendant has offered no evidence of
> any mayoral action.

> 3. Even as of the time of the November 26, 2012 hearing, Assistant Solicitor
> Doran stated a decision to terminate had not been made, "I believe there were still
> a lot of factors that were being considered at that point, but I don't know if there
> was -- I don't recall when decisions were made specifically; this was a while ago."
> (PF100).

> 4. Maloney did not receive any communication regarding the outcome of the
> November 26, 2012 hearing until December 28, 2012, when her attorney was
> advised that the City was demoting Maloney to sanitarian.  At the January 4, 2013

meeting there was no mention that as a condition to accepting the sanitarian position, Maloney would be required to sign a Release of any claims, and the City never referenced a Settlement Agreement. (PF113).

5. By subsequently demanding later in the day of January 4, 2013, after the meeting, that as a term and condition of accepting the sanitarian position within three hours Maloney would have to agree to release all claims, Defendant failed to comply with the knowing and voluntary waiver requirements of the Older Workers Benefit Protection Act of 1990 and the ADEA, 29 U.S.C. §626 (f).[fn]

> [fn] Under 29 U.S.C. §626 (f)(1)(D) an individual can only waive rights or claims in exchange for consideration in addition to anything of value to which the individual already is entitled; 29 U.S.C. §626 (f)(1)F) requires that an individual be given a period of at least 21 days within which to consider the agreement; 29 U.S.C. §626 (f)(1)(G) provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired; 29 U.S.C. §626 (f)(2)(B) provides that a waiver in settlement of a charge filed with the Equal Employment Opportunity Commission alleging age discrimination may not be considered knowing and voluntary unless at a minimum - the individual is given a reasonable period of time within which to consider the settlement agreement.

6. Even after Maloney indicated she would not sign a Release on January 7, 2013, Doran authored a letter in which she stated: "As such, kindly let this letter confirm the City's acknowledgement of the rejection of the offer to return to employment as a sanitarian for the City of Bethlehem." At that time the City did not terminate Maloney and did nothing until three days later after it was aware that Maloney filed the EEOC Charge.

7. The City failed to follow its employee handbook in carrying out the termination by not taking timely action: "Delay in imposing punishment, once the facts have been ascertained, will not be condoned and may be a basis for overruling a supervisor . . . No accumulation of offenses will be permitted as a basis for punishment."

8. The City lacks any credibility concerning any proffered reason as to why it took action against Maloney. Incredibly, the City advised the Pennsylvania Unemployment Compensation Board that it never terminated Maloney. On April 16, 2013, Assistant Solicitor Doran advised the Pennsylvania Unemployment Compensation Board, "Ms. Maloney was not discharged from her employment

with the City of Bethlehem. Rather, it was Ms. Maloney's voluntary decision to
no longer be employed by the City of Bethlehem" and "Ms. Maloney was
provided the opportunity to have suitable full-time employment, which she chose
not to accept." (See Exhibit "X").

9. The City failed to follow the City of Bethlehem Code which grants the Board of
Health the power to make employment decisions with regard to the Director of
Health.

Pl.'s Resp. In Opp'n Def. Mot. Summ. J., pp. 18-21.  Viewed individually, Plaintiff's allegations

would likely fail to satisfy her burden of showing causation and material adversity.  As a whole,

however, a reasonable jury could find that Defendant's conduct was retaliatory and materially

adverse.  Although it is a close question, the motivation behind Defendant's actions in

terminating Plaintiff is a proper jury inquiry.  Taking all facts in a light most favorable to

Plaintiff, she has carried her burden of proving a *prima facie* case of retaliation as a genuine issue

of material fact.  Summary judgment is therefore denied with respect to Plaintiff's Title VII

retaliation claim.

## IV.    <u>CONCLUSION.</u>

For the reasons discussed above, Defendant is entitled to summary judgment on

Plaintiff's claim for violation of her alleged Fourteenth Amendment due process protections in

Count IV of the Complaint.  Summary judgment is denied as to Plaintiff's claim for Title VII

retaliation claim in Count III of the Complaint.  An appropriate order follows.